UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN MOORE, AMY REED, and DOMINIC GALLAGHER on behalf of themselves, all others similarly situated, and on behalf of the general public, | Case No. 17-cv-06288-JST |
| | **ORDER GRANTING MOTION TO REMAND** |
| Plaintiffs, | Re: ECF No. 17 |
| v. | |
| ARAMARK UNIFORM SERVICES, LLC; ARAMARK UNIFORM SERVICES (SANTA ANA), LLC; ARAMARK UNIFORM & CAREER APPAREL, LLC; and DOES 1-100, | |
| Defendants. | |

## I.      INTRODUCTION

Before the Court is Plaintiffs' Motion to Remand.  ECF No. 17.  For the reasons set forth below, the Court will grant the motion.

## II.     BACKGROUND

### A.      Facts and Procedural History

Plaintiffs Alan Moore, Amy Reed, and Dominic Gallagher ("Plaintiffs") bring a putative class action suit asserting several claims under California wage laws and related statutes against Defendants Aramark Uniform Services, LLC, Aramark Uniform Services (Santa Ana), LLC, and Aramark Uniform & Career Apparel, LLC (collectively "Aramark").

Aramark is a provider of food, facilities, and uniform services.  ECF No. 1-1 ("FAC") ¶ 37.  The "uniform portion of its business includes the rental, sale, cleaning, maintenance, and delivery" of uniforms and other items to clients.  Id.  Aramark operates out of approximately twenty-six locations or work sites throughout California.  Id. ¶ 38.  During the relevant time

period, named Plaintiffs Alan Moore and Dominic Gallagher were employed by Aramark as non-exempt route sales representatives and named Plaintiff Amy Reed was employed as a non-exempt general floor laborer.  FAC ¶¶ 26-28.  Plaintiffs worked out of Aramark's Stockton, California and Novato, California locations.  Id.

In their First Amended Complaint ("FAC"), Plaintiffs assert the following causes of action under California law: (1) failure to pay for all time worked; (2) failure to authorize and permit rest periods; (3) knowing and intentional failure to comply with itemized employee wage statement provisions; (4) failure to pay all wages due at the time of termination of employment; (5) failure to reimburse business expenses/illegal deductions; and (6) violation of California's Unfair Competition Law.  FAC ¶¶ 87-152.

On October 30, 2017, Aramark removed the action to this Court pursuant to 28 U.S.C. §§ 1331 and 1441.  See ECF No. 1 at 3.  Aramark argues that Plaintiffs' claims for failure to pay overtime, failure to provide meal periods, failure to pay all wages earned, and failure to authorize and permit rest breaks are completely preempted by section 301 of the Labor Management Relations Act ("LMRA").  ECF No. 1 at ¶¶ 12, 30, 36, 41.  On December 19, 2017, Plaintiffs moved to remand the action to the Alameda County Superior Court pursuant to 28 U.S.C. § 1447(c) on grounds that the Court lacks subject matter jurisdiction.  ECF No. 17 at 9.  Plaintiffs contend that preemption under section 301 of the LMRA is not proper because their claims arise out of state law and do not require interpretation of any of the terms in the relevant collective bargaining agreements ("CBAs").  ECF No. 17 at 13.

## III.    LEGAL STANDARD

LMRA section 301 provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization."  29 U.S.C. § 185(a).  Section 301 encapsulates "a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts."  Allis–Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985) (footnote omitted).  "This federal common law, in turn, preempts the use of state contract law in CBA interpretation and enforcement."  Matson v. United Parcel Serv., Inc., 840 F.3d 1126, 1132 (9th Cir. 2016) (internal citation and quotation marks omitted).

To give "the policies that animate § 301 . . . their proper range," its preemptive force "extend[s] beyond suits alleging contract violations" to include "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement." Lueck, 471 U.S. 210-11. Despite the strong preemptive force of section 301, however, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by [it]." Id. at 211. "[T]he Supreme Court has repeatedly admonished that § 301 preemption is not designed to trump substantive and mandatory state law regulation of the employee-employer relationship; § 301 has not become a 'mighty oak' that might supply cover to employers from all substantive aspects of state law." Humble v. Boeing Co., 305 F.3d 1004, 1007 (9th Cir. 2002) (citing Lingle v. Norge Div. of Magic Chef Inc., 486 U.S. 399, 408-09 (1988); Livadas v. Bradshaw, 512 U.S. 107, 122 (1994)). "In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." Lueck, 471 U.S. at 212 (footnote omitted).

"The demarcation between preempted claims and those that survive § 301's reach is not . . . a line that lends itself to analytical precision." Cramer v. Consolidated Freightways, Inc., 255 F.3d 683, 691 (9th Cir. 2001). The Ninth Circuit has articulated a two-prong inquiry to analyze whether section 301 preemption applies. Burnside v. Kiewit Pacific Corp., 491 F.3d 1053, 1059-60 (9th Cir. 2007). A court must first determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted and our analysis ends there." Id. at 1059 (citation omitted). However, if the court determines the right underlying the state claim(s) "exists independently of the CBA" the court then proceeds to the second prong, which examines whether the right is "substantially dependent on analysis of a collective bargaining agreement." Id. (citation and internal quotation marks omitted).

In determining if the first prong is met (whether a right is independent of a CBA) a court must evaluate whether the "legal character of a claim" is "independent of rights under the

3

collective bargaining agreement." <u>Livadas</u>, 512 U.S. at 123 (internal citation and quotation marks omitted). Section 301 preempts the claim if it is "founded directly on rights created by collective bargaining agreements . . . ." <u>Caterpillar v. Williams</u>, 482 U.S. 386, 394 (1987).

In determining whether the second prong is met (whether the claim is "substantially dependent" on a CBA) the Court must evaluate whether the claim can be resolved by "'look[ing] to' versus interpreting the CBA. If the latter, the claim is preempted; if the former, it is not." <u>Burnside</u>, 491 F.3d at 1060 (internal citations omitted). "When the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." <u>Livadas</u>, 512 U.S. at 124 (citation omitted). For example, "[a] collective-bargaining agreement may . . . contain information such as rate of pay . . . that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled," but that would not mean the claim is preempted. <u>Lingle</u>, 486 U.S. at 413 n.12. Additionally, section 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." <u>Livadas</u>, 512 U.S. at 123 (footnote omitted); <u>see also</u> <u>Balcorta v. Twentieth Century-Fox Film Corp.</u>, 208 F.3d 1102, 1111 (9th Cir. 2000).

## IV.    DISCUSSION

Before turning to the merits of the parties' preemption arguments, the Court must first decide what claims are at issue. Aramark argues that one reason removal is proper is that Plaintiffs make claims for failure to pay overtime wages and failure to provide meal periods in the first amended complaint, and these claims are preempted pursuant to section 301. ECF No. 1 ¶ 12; ECF No. 19 at 5. Plaintiffs respond that any references to such claims in the complaint are inadvertent, ECF No. 17 at 8 n.4, and that the FAC does not actually plead causes of action for failure to provide meal periods or failure to provide overtime pay. <u>Id.</u> at 8. A review of the complaint supports Plaintiffs' position, and the Court therefore addresses only the claims actually identified as causes of action. <u>See</u> FAC ¶¶ 87-152.

Plaintiffs generally argue that the first cause of action – failure to pay for all time worked – is not preempted because it arises out of state law and it does not require interpretation of the

4

CBAs. ECF No. 17 at 13-14. Aramark responds that this cause of action is preempted because it alleges breach of a contractual obligation under the applicable CBA and requires interpretation of the applicable language in the CBA. ECF No. 19 at 6-9. Plaintiffs also argue that the second cause of action – failure to authorize and permit rest periods – is not preempted because it arises out of state law and does not require interpretation of the CBAs. ECF No. 17 at 15-16. Aramark responds that resolving the merits of the rest break claim "requires an analysis and interpretation of the various different CBAs applicable to putative class members." ECF No. 19 at 12.

**A.  The Claim for Failure to Pay for All Time Worked is Not Preempted**

**1.  Aramark Has Not Satisfied the First Prong of <u>Burnside</u>**

Under the first prong of the <u>Burnside</u> test, the Court first asks whether Plaintiffs' claims involve rights conferred upon an employee by state law or solely by a CBA. <u>Burnside</u>, 491 F.3d at 1059. Here, the Court concludes that Plaintiffs' first cause of action, failure to pay for all time worked, is independently rooted in state law. Plaintiffs assert that Aramark "ha[s] a continuous and consistent policy of clocking-out Plaintiffs and those similarly situated for a thirty (30) minute meal period, even though Plaintiffs . . . work through their meal periods." FAC ¶ 88. Plaintiffs' claim is analogous to "'time-shaving' . . . the practice of doctoring hourly employees' time sheets to reduce their pay." <u>In re Wal-Mart Stores, Inc. Wage & Hour Litig.</u>, 505 F.Supp.2d 609, 616 (N.D. Cal. 2007); <u>see also</u> <u>Ross v. U.S. Bank Nat. Ass'n</u>, 542 F. Supp. 2d 1014, 1024 (N.D. Cal. 2008) ("The alleged truncation practice in this case is similar to the time-shaving practice in <u>Wal-Mart</u>. Both . . . involve a continuous and systematic deprivation of the employees' time worked for the purpose of reducing the employees' pay.").

Aramark disagrees with Plaintiffs' characterization of the first cause of action and instead asserts that it "arises as a matter of contract between an employee and his or her employer." ECF No. 19 at 7 (emphasis omitted). Simply saying this doesn't make it true. In fact, Plaintiffs ground their claim for failure to pay for all time worked in California Labor Code sections 204(a) and 1194(a). Under California Labor Code section 204(a), "[a]ll wages . . . earned by any person in any employment are due and payable." Under section 1194(a), an "employee receiving less than the legal minimum wage . . . applicable to the employee is entitled to recover in a civil action the

unpaid balance of the full amount of this minimum wage." Plaintiffs claim not that Aramark breached the CBA, but rather that they "have suffered, and continue to suffer, substantial unpaid wages, lost interest on such wages, and expenses and attorneys' fees in seeking to compel Defendants to fully perform their obligations under state law." FAC ¶ 95. "[T]he independent state law right to be paid for all hours worked does not require any interpretation of the CBA . . . . Plaintiffs' unpaid wage claims are not based on a dispute over how to calculate their pay rate under the CBA, but on Defendant's alleged failure to pay them any regular or overtime pay *at all* for certain time worked."[1] Bryant v. Catholic Healthcare W., No. CV 11-07490 DDP JCGX, 2012 WL 3425649, at *3 (C.D. Cal. Aug. 13, 2012) (rejecting preemption argument regarding section 1194 claim); see also See Stone v. Sysco Corporation, No. 16-CV-01145-DAD-JLT, 2016 WL 6582598 at *9 (E.D. Cal. Nov. 7, 2016) (citing California Labor Code section 204(a) in finding that defendants "continuous policy of not paying Plaintiffs . . . 'arises from state law'") (internal citation omitted); see also Martinez v. Mann Packaging Co. Inc., No. 12-CV-02122-EJD, 2012 WL 4179237 at *1-2 (N.D. Cal. Sept. 18, 2012).

Plaintiffs' first cause of action – failure to pay for all time worked – is not subject to section 301 preemption under the first prong of the Burnside test. This claim exists independently from the CBA and is "a right conferred upon an employee by virtue of state law. . . ." Burnside, 491 F.3d at 1059.

### 2. Aramark Has Not Satisfied the Second Prong of Burnside

Because the right exists independently of the CBA, the Court asks whether the right is "nevertheless substantially dependent on the analysis of a collective-bargaining agreement." Burnside, 491 F.3d at 1059 (internal quotation marks and citations omitted). "'[R]eview[ing]' or 'analyz[ing]' a CBA is not the same as 'interpreting' its text, as interpretation implies discordance over the meaning of a term that requires authoritative explication." Cuellar-Ramirez v. U.S. Foods, Inc., No. 16-CV-00085-RS, 2016 WL 1238603 at *5 (N.D. Cal., Mar. 22, 2016).

---

[1] That Aramark's alleged conduct might also violate the CBA does not change this result. Bryant v. Catholic Healthcare W., No. CV 11-07490 DDP JCGX, 2012 WL 3425649, at *2 (C.D. Cal. Aug. 13, 2012) ("That Plaintiffs [also] state that these violations also violate the CBA does *not* change the substantive basis for their claim." (emphasis in original)).

Aramark argues that resolving Plaintiffs' first cause of action requires interpretation of "numerous different collective bargaining agreements" that include "complicated formula[s] regarding how to calculate hourly rates of pay and certain weekly minimum pay." ECF No. 19 at 9. See also ECF No. 3-1 at 27-30. However, the "need to consult the CBAs to determine the wage rate to be used in calculating liability cannot, alone, trigger section 301 preemption." Burnside, 491 F.3d at 1074.

Aramark also asserts that "the determination of what Plaintiffs are allegedly owed in unpaid wages will necessarily and substantially depend upon an analysis of the numerous different collective bargaining agreements that applied to different groups of putative class members throughout California, . . . [which] include a complicated formula regarding how to calculate hourly rates of pay and certain weekly minimum pay, depending on whether commission are earned based on sales targets." ECF No. 19 at 9. This argument conflates the need to analyze the agreements' provisions with the need simply to apply those provisions. Plaintiffs "do not dispute the hourly rate they are entitled to or how it was calculated." ECF No. 22 at 7. In Livadas, the plaintiff claimed that she was entitled to payment of a penalty for the employer's failure to pay wages immediately following her discharge under California Labor Code section 203. 510 U.S. at 111. The Livadas plaintiff argued that she was not paid immediately upon discharge, but did not dispute how much she was owed. Id. at 114. The Court noted that there was not even a "colorable argument" that a claim under section 203 was preempted because there was no "indication that there was a 'dispute' in the case over the amount of the penalty to which [plaintiff] would be entitled." Id. at 124-25, 135 (finding preemption on other grounds). Similarly here, there is no indication of a dispute. Any application of the CBA will be mechanical and require the Court only to apply the relevant formulas listed in the CBAs to determine the liability amount. See also Rodriguez v. Freshpoint, Inc., No. 16-cv-5271-PJH, 2016 WL 6780353 (N.D. Cal. Nov. 2, 2016) (determining a claim for failure to pay straight-time wages was not preempted by section 301 of the LMRA because no interpretation of the CBA was required); Santiago v. Aramark Uniform and Career Apparel, LLC, No. C 12-04462 JSW, 2012 WL 5868954, at *4 (N.D. Cal. Nov. 19, 2012) (finding a dispute regarding the "method by which premium pay is calculated and whether the

formula set forth in the CBA constitutes a premium wage rate" required interpretation of the CBA.)

Accordingly, Plaintiffs' claim for failure to pay for all time worked is not substantially dependent on analysis of the CBA and would require, at most, reference to the relevant provisions.[2] Therefore, Plaintiffs' claim for failure to pay for all time worked is not preempted by section 301 of the LMRA because it fails both prongs of the <u>Burnside</u> test.[3]

### B. The Claim for **Failure** to Auth**orize and Permit Rest Periods is Not Preempted**

Plaintiffs assert that Aramark violated California Labor Code section 226.7 by failing to authorize and permit rest periods. FAC ¶¶ 99-116.

"Nonnegotiable rights are not subject to section 301 preemption, even if employees are covered by a valid CBA." <u>Azpeitia v. Tesoro Ref. & Mktg. Co. LLC</u>, No. 17-CV-00123-JST, 2017 WL 3115168, at *6 (N.D. Cal. July 21, 2017) (citing <u>Valles v. Ivy Hill Corp.</u>, 410 F.3d 1071, 1081 (9th Cir. 2005). Although <u>Valles</u> concerned the state law provisions governing meal periods, 410 F.3d at 1081, a California appellate court has held that rest breaks are a non-waivable state mandated "minimum labor standard." <u>Zavala v. Scott Bros. Dairy</u>, 143 Cal. App. 4th 585, 594 (2006); <u>see also</u> <u>Scott v. Traffic Management, Inc.</u>, No. CV 16-02475 SJO (KSx), 2016 WL 3212246 at *4 (C.D. Cal. June 6, 2016). Further, rest breaks, like meal periods, are similarly regulated by Labor Code section 226.7 and "address some of the most basic demands of an employee's health and welfare." <u>Valles</u>, 410 F.3d at 1081 (internal quotation marks and citation

---

[2] In the notice of removal, Aramark argues that the claim for failure to pay all wages is preempted because the question of whether employees were provided a meal break or whether they were "clocked-out" without being given a meal break is dependent upon the CBA and may be resolved through interpreting provisions of the CBA. ECF No. 1 ¶¶ 36, 38. Aramark did not raise this argument in its opposition to Plaintiffs' motion to remand.

[3] The Court acknowledges, but does not follow, the Ninth Circuit's recent unpublished disposition in <u>McKinley v. Southwest Airlines Company</u>, 680 Fed. Appx. 522 (2017). There, the court decided that a claim for overtime wages would require interpretation of the CBA because the court would need to "examine each form of pay provided by the CBA, determine when that pay was due, and then decide whether the pay should have been included in [p]laintiff's regular rate." <u>Id.</u> at 524 (internal citation omitted). Perhaps the determination of wages under the CBA at issue in <u>McKinley</u> required a degree of contractual analysis not present here, and the case is distinguishable on that basis. To the extent the facts in <u>McKinley</u> are the same as those here, however, the Court notes that <u>McKinley</u> is not precedential and declines to follow it. <u>See</u> Ninth Circuit Rule 36-3(a).

1  omitted).  Thus, this Court holds that the right to rest breaks is non-negotiable and therefore not

2  subject to section 301 preemption.

3        **C.**     **Supplemental Jurisdiction Does Not Exist**

4        Because the LMRA does not preempt any of Plaintiff's claims, this Court lacks subject

5  matter jurisdiction over these claims and cannot exercise supplemental jurisdiction.

6                          **CONCLUSION**

7        For the foregoing reasons, Plaintiffs motion to remand is granted.  This action is hereby

8  REMANDED to the Alameda Superior Court for further proceedings.

9        The Case Management Conference scheduled for February 7, 2018 is vacated.

10        **IT IS SO ORDERED.**

11  Dated:  February 5, 2018

12  

13                          JON S. TIGAR
                   United States District Judge

14  

15  

16  

17  

18  

19  

20  

21  

22  

23  

24  

25  

26  

27  

28